IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES C. FOCHT and KAREN FOCHT, | ) | Case No. 3:18-cv-151 |
| | ) | |
| Plaintiffs, | ) | JUDGE KIM R. GIBSON |
| | ) | |
| v. | ) | |
| | ) | |
| NATIONSTAR MORTGAGE, LLC, d/b/a | ) | |
| MR. COOPER, as successor in interest to | ) | |
| SETERUS, INC. | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

### I.      Introduction

James Focht and Karen Focht (the "Fochts"), owners of the property located at 180 Kingdom Street, Tyrone, Pennsylvania (the "Property") brought this action against Nationstar Mortgage, LLC[1] ("Nationstar"), alleging violations of various federal and Commonwealth statutes, including the Fair Credit Reporting Act ("FCRA"), relating to an attempt to satisfy their mortgage (the "Mortgage") on the Property. The Fochts allege that Nationstar failed to accept a valid tender of payment to satisfy the Mortgage and, in doing so, violated their rights under several consumer protection statutes. Nationstar moved for summary judgment, arguing that: (1) the Fochts never made a valid tender of payment in full and Nationstar was well within its rights to decline to accept a partial payment; and (2) FCRA preempts several of the Fochts' claims. Nationstar's Motion for Summary

---

[1] Nationstar is the successor in interest to Seterus, Inc., against whom the Fochts' initially filed this action. Seterus and Nationstar merged in 2019. As Nationstar is the current Defendant, the Court will refer to it, rather than to Seterus, when describing Seterus' conduct.

Judgment (ECF No. 45) is fully briefed (ECF Nos. 43–45, 53–56, 58) and ripe for disposition.

Also pending before the Court is the Fochts' Motion for Sanctions.  (ECF No. 39.) The Fochts moved for sanctions, contending that: (1) Nationstar had employed agents to inspect the Property who trespassed while doing so (ECF No. 39 at 1–2); (2) Nationstar force-placed insurance on the Property and charged the Fochts for that insurance even though the Fochts had maintained insurance on the Property (Id. at 2–3); and (3) Nationstar attempted to pay real estate property taxes not due on the property and charge the Fochts for those payments (Id. at 3–4).  The Fochts' Motion for Sanctions is fully briefed (ECF Nos. 39–41, 67, 68) and ripe for disposition.

For the following reasons, the Court **GRANTS** Nationstar's Motion for Summary Judgment and **DENIES** the Fochts' Motion for Sanctions and holds that Nationstar is entitled to summary judgment on each of the Fochts' claims because: (1) no reasonable jury could conclude that the Fochts tendered sufficient payment to satisfy the Mortgage; and (2) the Fochts have not produced sufficient record evidence to create a genuine dispute of material fact as to their claims which would survive even after their failure to satisfy the Mortgage.  The Court further holds that Nationstar did not engage in bad faith conduct and its conduct does not merit sanctions.

## II.    Jurisdiction and Venue

The Court has subject matter jurisdiction because the Fochts' FCRA claim arises under federal law.  28 U.S.C. § 1331.  The Court has supplemental jurisdiction over the

Fochts' remaining claims because they form part of the same case or controversy as their FCRA claim.  28 U.S.C. § 1367.

Venue is proper in this district because the real property that is the subject of the action is located within this district and a substantial portion of the events giving rise to the claim occurred in this district.  28 U.S.C. § 1391(b)(2).  Further, this action was timely removed from the Blair County Court of Common Pleas, which this district embraces.  28 U.S.C. § 1441.

## III.   Factual Background

The Court derives the following facts from a combination of Nationstar's Concise Statement of Material Facts (ECF No. 43) and attached Appendices, as well as the Fochts' Responsive Concise Statement of Material Facts[2] (ECF No. 54) and its Appendix (ECF No. 55).  All facts are undisputed unless otherwise noted.[3]

### A.  The Parties and the Property

The Fochts own a home, the Property, at 180 Kingdom Street in Tyrone, Pennsylvania.  (ECF No. 43 ¶ 2.)  To purchase the Property, the Fochts executed the Mortgage on the Property in favor of PHH Mortgage Services on May 24, 2002.  (*Id.* ¶¶ 3, 5.)  The loan's interest rate was 6.75%.  (ECF No. 55-1 at 11:25.)  The Federal National

---

[2] The Fochts, in filing their Responsive Concise Statement of Material Facts, included additional factual material in response to Nationstar's Concise Statement of Material Facts that does not comply with this district's local rules.  *See* LCvR 56(C)(1)(c).  However, this failure to wholly comply with the local rules is relatively minor and the Court will consider, in its analysis, all factual allegations contained in that document which have evidentiary support in the record.

[3] Nationstar did not file a response to the additional facts the Fochts alleged in their Responsive Concise Statement of Material Facts (ECF No. 54).  In accordance with Local Civil Rule 56, the Court therefore considers those facts which have evidentiary support in the record to be admitted for purposes of deciding the instant Motion.  *See* LCvR 56(E)

Mortgage Association ("Fannie Mae") is the current holder of the Mortgage. (ECF No. 43 ¶ 6.) Nationstar, a loan servicing company,[4] services the Mortgage on Fannie Mae's behalf. (*Id.* ¶ 7.) Nationstar states that it has a policy that permits borrowers, like the Fochts, to use funds remaining in the Mortgage's escrow account[5] to cover deficiencies in a payment to satisfy a mortgage, but that it requires a request in writing to trigger this policy. (ECF No. 55-4 at 2:3–24.)

## B. The Payoff Attempts

On March 22, 2018, the Fochts contacted Nationstar to determine the amount currently owed on the Mortgage in order to pay it off and refinance; at that time, the remaining principal on the Mortgage totaled $139,307.50. (*Id.* ¶¶ 9–10; ECF No. 55-1 at 8:13–16.) In response, Nationstar states that it issued a payoff letter[6] (the "First Payoff Letter") to the Fochts which listed a payoff amount of $141,470.99; payment of this amount would satisfy the loan if made by April 20, 2018. (ECF No. 43 ¶¶ 11–12.) The Fochts deny receiving the First Payoff Letter and assert that they only received it after filing this lawsuit. (ECF No. 54 ¶¶ 11–12.) The First Payoff Letter stated that the Fochts were still obligated to make their scheduled monthly payments as they came due and

---

[4] A loan servicer collects payments on behalf of the loan holder and distributes the payments to other parties. These payments include the principal and interest on the loan, taxes, and insurance, among others.

[5] An escrow account is an account where a third party holds funds for two other parties. In the mortgage context, the mortgage servicer will hold a portion of a monthly mortgage payment in escrow to cover real estate taxes and insurance premiums.

[6] A payoff letter is a document that provides a borrower with instructions about how to pay off a loan in its entirety; this information often includes the amount due (including interest due up to a certain date, by which payment must be made), additional fees and charges, where to send the payment, and how to make the payment.

that, at Nationstar's option, it could "return funds that are insufficient to complete the payoff." (ECF No. 43-1 at 44–45.)

On March 27, 2018, the Fochts tendered a check in the amount of $139,307.50 (the "First Tender"), the outstanding principal on the Mortgage, to Nationstar. (ECF No. 43 ¶¶ 14–15.) Recognizing that the First Tender, representing only the outstanding principal and not interest or fees, would not satisfy the Mortgage, the Fochts included a letter stating that they recognized that the First Tender was deficient and that they would pay the difference once Nationstar informed them of the amount due. (ECF No. 55-1 at 4:23–5:9.) On April 12, 2018, Nationstar returned the First Tender to the Fochts with a letter stating that it was insufficient to satisfy the Mortgage. (ECF No. 43 ¶ 16.) Although Nationstar sent the package via overnight delivery on April 12, 2018, the Fochts did not receive it until April 18, 2018, because Nationstar addressed the package to a post office box which cannot receive deliveries from third-parties, like FedEx. (ECF No. 54 ¶ 16.) On April 18, 2018, the Fochts resent the First Tender to Nationstar, also enclosing a second check in the amount of $1,777.05, for a total of $141,084.55, to pay off the Mortgage (the "Second Tender"); the Second Tender was approximately $400 short of the amount stated in the First Payoff Letter. (ECF No. 43 ¶ 18.)

Nationstar states that, on April 25, 2018, it issued a second payoff letter to the Fochts (the "Second Payoff Letter"), listing a payoff amount of $141,885.44, to be paid by May 4, 2018. (*Id.* ¶ 17.) The Fochts deny receiving the Second Payoff Letter. (ECF No. 54 ¶ 17.) On April 26, 2018, Nationstar returned the Second Tender to the Fochts, stating that it was insufficient to satisfy the Mortgage. (ECF No. 43 ¶ 19.)

From March 2018 through May 2018, Nationstar sent the Fochts a total of six separate payoff letters—including both the First Payoff Letter and Second Payoff Letter (collectively, the "Payoff Letters")—stating different payoff amounts and payoff dates; some of these payoff letters had payoff windows that overlapped with others. (ECF No. 55-4 at 6:16–18.) Nationstar sent the following payoff letters: (1) the First Payoff Letter was sent on March 22, 2018, and gave a payoff amount of $141,470.99, good through April 20, 2018 (ECF No. 43 ¶¶ 11–12); (2) a payoff letter was sent on April 6, 2018, listing a payoff amount of $141,239.12, good through April 11, 2018 (ECF No. 55-4 at 9:15–10:11); (3) Nationstar issued another payoff letter on April 16, 2018, with a payoff amount of $142,151.54, good through May 16, 2018 (*Id.* at 11:21–12:2); (4) Nationstar issued a fourth payoff letter on April 20, 2018, with a payoff amount of $141,642.85, good through April 25, 2018 (*Id.* at 12:15–13:13); (5) the Second Payoff Letter was sent on April 25, 2018, with an amount of $141,885.44, to be paid by May 4, 2018 (ECF No. 43 ¶ 17); Nationstar issued a sixth and final payoff letter on May 14, 2018, with an amount of $142,209.59, good through May 16, 2018.[7] (ECF No. 55-4 at 14:3–19.)

### C. The Fochts Directly Contact Nationstar Representatives

While the various payoff letters and tenders were being sent, received, and resent by the parties, the Fochts also contacted Nationstar's representatives by telephone. (ECF No. 55-1 at 4:23–5:9.) After Nationstar returned the First Tender to the Fochts, James Focht called Nationstar directly and was told that the First Tender was $1,775.05 short.

---

[7] In its briefing in support of its Motion for Summary Judgment, Nationstar relies only upon the first and fifth payoff letters it sent, i.e., the First Payoff Letter and the Second Payoff Letter; it does not mention the other payoff letters. (*See* ECF No. 43.)

(ECF No. 55-1 at 17:8–25.)  Within a day of receiving this information, the Fochts issued a check in the amount of $1,775.05 and overnighted it to Nationstar; this was the Second Tender.  (*Id.*) Shortly after sending the Second Tender, on April 20, 2018, James Focht spoke to a representative at Nationstar, Kayla Heady, who stated that Nationstar had received the Second Tender, that interest would stop accruing, and that Nationstar would process the check.  (*Id.* at 18:2–11.)  Heady told James Focht that Nationstar would work to release the lien on the title once the payment posted, and that he could ignore past-due notices since he was paying the Mortgage in full.  (ECF No. 55-4 at 16:20–18:2.)  However, on April 23, 2018, Heady placed a notation in Nationstar's file on the Mortgage that if the Fochts did not pay the shortage or authorize the use of escrow funds, the Second Tender would be rejected and returned; this information was to be delivered to the Fochts the next time a Nationstar representative spoke to the Fochts.  (*Id.* at 18:3–19:7.)

Approximately a week after sending the Second Tender, on April 27, 2018, James Focht again spoke to Heady, who informed him that there was still a deficiency of approximately $400.  (ECF No. 55-1 at 23:19–24:4.)  James Focht requested that Nationstar use funds remaining in the Mortgage's escrow account to cover this shortage; when Nationstar stated that they could not use those funds, he stated that he would not send Nationstar any more money.  (*Id.* at 24:4–20).  According to James Focht, Nationstar never informed him that he could send written authorization for the use of escrow funds; Nationstar's representative, Edward Hyne, testified, based upon Heady's notes of her conversations with James Focht, that Nationstar had informed him that he could send written authorization.  (*Id.* at 24:24–25:1; ECF No. 55-4 at 2:16–24, 20:10–21:19.)

The Fochts have made no payments since February 2018.  (ECF No. 55-1 at 14:19–25; 20:20–25.)

### D. Mortgage Error Leads to Disputes over Insurance, Property Inspections, and Taxes [8]

The Fochts' Motion for Sanctions has its origins in a simple, innocent error made in 2002: when the Fochts executed the Mortgage, the authors of the Mortgage recorded the Property's address incorrectly. (Tr. at 100:24–101:5.)

The Property is located at 180 Kingdom Street, Tyrone, Pennsylvania but the Mortgage, along with the accompanying note, listed the Property's address as 259 Kingdom Street, Tipton, Pennsylvania.[9]  (*Id.* at 34:1–2; 97:23–98:15; Def. Ex. 1 at 3; Def. Ex. 2 at 1.)  Originally, the Property's address was on a rural mail route, rather than a normal street address.  (Tr. at 42:15–20.)  For over 40 years, the Fochts have had their mail sent to P.O. Box 259 in Tipton, Pennsylvania.  (*Id.* at 42:18–20; 44:10–17.)  In 2001, the Fochts changed insurance companies and the new insurance policy recorded the Property's address as 259 Kingdom Street rather than 180 Kingdom Street.  (*Id.* at 42:11–14.)

At some point after the Mortgage was executed, there was a 9-1-1 change in Tipton which then gave the Fochts the address of 180 Kingdom Street for the Property.  (*Id.* at

---

[8] The Court makes the following factual findings based on evidence and testimony presented at a hearing on the Fochts' Motion for Sanctions conducted on June 16, 2020.  (ECF No. 63.)  The Court will cite to: (1) the transcript of the hearing (ECF No. 64, "Tr. at [X]"); (2) exhibits introduced by the Fochts ("Pl. Ex. [X]"); and (3) exhibits introduced by Nationstar ("Def. Ex. [X]").  The Court does not rely upon the facts related in Section III.D in ruling upon Nationstar's Motion for Summary Judgment.

[9] The Mortgage failed to record note deed book and page where the conveyance was recorded and the property description was based on metes and bounds, and the deed itself did not specify the Property's address, so there is no way, based upon the evidence before the Court, to conclusively determine the Property's address at the time the Mortgage was executed.  (*See* Def. Ex. 1 at 3, 18; Def. Ex. 3.)

42:15–43:3.)  For several years after this change, the servicer of the Mortgage—not yet Nationstar—used the correct address.  (*Id.* at 109:2–21.)  As best the Court can determine, when the Fochts executed the Mortgage, the address of the Property was written down incorrectly, taking the P.O Box number as the address of the Property, rather than the Property's actual address at the time.

The Fochts, in addition to the Mortgage, have a home equity line of credit with M&T Bank on the Property.  (*Id.* at 52:22–53:4.)  The Fochts maintain insurance on the Property; on this insurance, M&T is listed as the mortgagee with Nationstar listed as holding a second mortgage on the Property—in other words, as far as the insurance policy is concerned, the Mortgage is a junior lien vis-à-vis the home equity line of credit. (Pl. Ex. 18.)  Nationstar asserts that the Mortgage is actually a senior lien and therefore its actions were taken to restore its rightful first claim to any insurance proceeds, but there is insufficient evidence of record to determine if this is the case, as although the Mortgage was executed on May 24, 2002, it is unknown when the Fochts first began their line of credit with M&T Bank.  (*See* ECF No. 68 at 9–10; Def. Ex. 1.)  On November 9, 2018, James Focht attempted to pay the insurance and was informed that M&T had been removed as a listed insured.  (Tr. at 52:25–53:8; *see* Pl. Ex. 3.)  M&T was eventually re-added to the insurance policy. (Tr. at 56:1–3.)

The Fochts, in addition to owning the Property at 180 Kingdom Street, also own the property located at 166 Kingdom Street; the Fochts own 166 Kingdom Street free of any mortgage—Nationstar does not service a mortgage on that property, but 166 Kingdom Street is listed on the title insurance policy that also covers 180 Kingdom Street.

(*Id.* at 35:1–6; 115:21—116:1; Def. Ex. 4 at 8.)  Because James Focht is a disabled veteran, he does not pay taxes on the Property, but does pay taxes on 166 Kingdom Street.  (Tr. at 35:7–15; *see* Pl. Ex. 8.)  In December 2019, James Focht received a call from his local tax collector's office stating that Nationstar had paid the taxes on 166 Kingdom Street, taxes which the Fochts had already paid.  (Tr. at 35:18–36:16.)

When Nationstar merged with Seterus, Nationstar, as Seterus' successor in interest, took over servicing the loans Seterus had previously serviced.  (*Id.* at 99:14–100:9.)  On March 1, 2019, the effective date of the merger, Seterus' servicing system properly identified the Property's address as 180 Kingdom Street.  (*Id.* at 100:14–20.)  In October 2019, Nationstar became aware of the discrepancy between the address listed in its servicing system—180 Kingdom Street—and the address listed on the Mortgage and note—259 Kingdom Street.  (*Id.* at 98:18–99:3.)  In resolving the discrepancy, Nationstar took the address listed on the note and Mortgage as authoritative and altered the address in its servicing software to 259 Kingdom Street.  (*Id.* at 111:21–112:5.)  In April 2020, Nationstar corrected this discrepancy in its system, returning the address in its records to 180 Kingdom Street.  (*Id.* at 123:8–16.)

As a result of altering its record address of the Property to 259 Kingdom Street, Nationstar believed that the Property lacked insurance because it had received confirmation of insurance coverage for 180 Kingdom Street, but not 259 Kingdom Street; Nationstar therefore sent the Fochts a letter asking for proof of insurance on 259 Kingdom Street.  (Def. Ex. 6; Tr. at 112:6–13.)  When the Fochts did not respond to Nationstar's

request, Nationstar acquired force-placed insurance[10] on the Property.  (Tr. at 117:9–22.)

Nationstar originally charged the Fochts for the costs of this insurance, but has since

refunded the cost of the premiums.  (*Id.* at 117:23–118:14.)

      In addition to affecting Nationstar's insurance records, the change of address in

Nationstar's servicing software also affected Nationstar's payment of property taxes.  (Tr.

at 115:14–20.)  Once Nationstar changed the Property address to 259 Kingdom Street, its

tax department paid the taxes on the Property through the Fochts' escrow account.  (*Id.*)

Nationstar also paid the property taxes at 166 Kingdom Street because the Property's title

insurance policy listed both 180 Kingdom Street and 166 Kingdom Street as covered

properties.  (*Id.* at 115:21–116:4; Def. Ex. 4 at 8.)  Nationstar has since refunded the taxes it

paid on 166 Kingdom Street and, as of hearing on this matter, was "in the process" of

obtaining a refund for the taxes on 180 Kingdom Street.  (Tr. at 116:8–19.)

      After the Fochts stopped making payments on the Mortgage, Nationstar began

conducting regular, monthly inspections of the Property to ensure that it was still in good

condition.  (*Id.* at 118:15–24.)  The Mortgage grants the mortgagee—and its agents, here,

Nationstar—the right to take "reasonable or appropriate" steps to protect its interest in

the Property if the Fochts failed to live up to their obligations under the Mortgage.  (Def.

Ex. 1 at 8.)  The costs of such actions would become additional debt the Fochts owed

under the Mortgage.  (*Id.* at 9.)  Nationstar began conducting inspections in March 2019

after it took over servicing the Mortgage from Seterus; Nationstar stopped conducting

---

[10] Current federal regulations promulgated by the Consumer Financial Protection Bureau define force-placed insurance as "insurance obtained by a [mortgage] servicer on behalf of the owner or assignee of a mortgage loan that insures the property securing such loan."   12 C.F.R. § 1024.37(a)(1).

inspections in January 2020.  (Tr. at 118:25–119:13.)  Nationstar intended the inspections to be "drive-by" or "no contact" inspections, where the inspectors do not enter the Property. (*Id.* at 76:1–17; 119:14–20.)  However, on multiple occasions, the inspectors did go onto the Property to inspect the house, though there is no evidence that any inspector ever entered the house on the Property.  (*See, e.g., id.* at 39:14–21; 48:2–13.)  The Fochts were charged for these inspections, and those charges remain outstanding on the Mortgage balance.  (*Id.* at 119:21–120:19.)

IV.    **Procedural Background**

The Fochts initially filed this action in the Blair County Court of Common Pleas on July 9, 2018; Nationstar removed it to this Court on July 30, 2018.   (ECF No. 1.)  In the Complaint, the Fochts brought the following claims: (1) declaratory judgment to quiet title to the Property and declare the Mortgage null and void (ECF No. 1-3 ¶¶ 40–44); (2) breach of the mortgage contract (*id.* ¶¶ 45–49); (3) violations of the Pennsylvania Mortgage Satisfaction Act ("MSA") (*id.* ¶¶ 50–57); (4) unfair or deceptive acts or practices in violation of Pennsylvania's Fair Credit Extension Uniformity Act ("FCEUA") (*Id.* ¶¶ 58–72); (5) violations of Pennsylvania's Unfair Trade Practices Act and Consumer Protection Law ("UTPA") (*id.* ¶¶ 73–75); (6) violations of FCRA (*id.* ¶¶ 76–86); and (7) violations of the Real Estate Settlement Procedures Act ("RESPA") (*id.* ¶¶ 87–100).  In a Memorandum Opinion and Order issued on September 19, 2018, the Court dismissed Counts II and VII, the Fochts' breach of contract and RESPA claims, respectively.  (ECF No. 7.)

On January 22, 2020, the Fochts moved for sanctions against Nationstar related to alleged trespasses to, and inspections of, the Property, along with fees assessed for those

inspections and premiums for insurance Nationstar had placed on the Property.  (ECF Nos. 39–41.)  Nationstar responded on February 6, 2020.  (ECF No. 42.)  The Court held an evidentiary hearing on the Motion for Sanctions on June 16, 2020.  (ECF No. 63.)  The parties filed post-hearing briefs on August 12, 2020.  (ECF Nos. 67, 68.)

Following discovery, Nationstar moved for summary judgment on February 12, 2020.  (ECF Nos. 43–45.)  The Fochts filed a Response in Opposition on March 20, 2020.  (ECF Nos. 53–56.)  Nationstar filed a Reply on April 10, 2020.  (ECF No. 58.)

V.      **Legal Standards**

   A. **Motion for Summary Judgment**

This Court will grant summary judgment only "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Melrose, Inc. v. Pittsburgh*, 613 F.3d 380, 387 (3d Cir. 2010) (quoting *Ruehl v. Viacom, Inc.*, 500 F.3d 375, 380 n.6 (3d Cir. 2007)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  There is a genuine issue of fact whenever "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also McGreevy v. Stroup*, 413 F.3d 359, 363 (3d Cir. 2005).    Material facts affect the outcome of the trial under governing law.  *Anderson*, 477 U.S. at 248.  The Court's role is "not to weigh the evidence or to determine the truth of the matter, but only to determine if the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party."  *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 581 (3d Cir. 2009).  In deciding a summary judgment motion, this Court "'must view the facts in the light most favorable to the

nonmoving party and draw all inferences in that party's favor.'" *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 278 (3d Cir. 2000) (quoting *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994)).

The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party meets this burden, the party opposing summary judgment "may not rest upon the mere allegations or denials" of the pleading, but "must set forth specific facts showing that there is a genuine issue for trial." *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 n.11 (1986)). "For an issue to be genuine, the nonmovant needs to supply more than a scintilla of evidence in support of its position—there must be sufficient evidence (not mere allegations) for a reasonable jury to find for the nonmovant." *Coolspring Stone Supply v. Am. States Life Ins. Co.*, 10 F.3d 144, 148 (3d Cir. 1993); *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (noting that a party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue").

### B.  Motion for Sanctions

In addition to its powers to sanction the conduct of parties and attorneys before it under Federal Rule of Civil Procedure 11(c), the Court possesses inherent power to sanction those who abuse the judicial process. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991). The Court may impose sanctions when a party acts in "bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* at 45–46. However, due to the breadth of the

Court's authority under this power, the Court must take care to exercise it with "restraint and discretion." *Fellheimer, Eichen & Braverman, P.C. v. Charter Techs., Inc.*, 57 F.3d 1215, 1224 (3d Cir. 1995). With this discretion comes the "ability to fashion an appropriate sanction" for conduct within the ambit of bad faith or abuse of the judicial process. *Id.* The Court should typically exercise its inherent power to impose sanctions only where the conduct is "egregious." *United States v. Jones*, 505 F. App'x 192, 194 (3d Cir. 2012).

## VI.    Discussion

Nationstar makes two principal arguments in support of its Motion for Summary Judgment: (1) that the Fochts never tendered a full payment of the Mortgage and, since their claims require payment in full of the Mortgage, Nationstar is entitled to summary judgment; and (2) FCRA preempts the Fochts' FCEUA and UTPA claims.[11]

The Fochts argue that Nationstar's conduct in imposing the costs of inspections, insurance, and property taxes not owed, as well as trespassing on the Property was in bad faith and deserves sanctions.

The Court begins by addressing Nationstar's Motion for Summary Judgment before proceeding to the Fochts' Motion for Sanctions.

### A.  **Nationstar Is Entitled to Summary Judgment on the Fochts' MSA Claim**

#### 1.  **The Parties' Arguments**

Nationstar argues that it is entitled to summary judgment because the Fochts never tendered sufficient funds to pay off the Mortgage. (ECF No. 44 at 4–5.) Nationstar

---

[11] As noted below, *see infra* Section VI.D, because the Court concludes that Nationstar is entitled to summary judgment on all claims due to the Fochts' failure to raise a genuine dispute of material fact, it need not consider Nationstar's preemption argument.

issued multiple payoff letters that instructed the Fochts how to pay off the Mortgage, and the Fochts disregarded these instructions. (*Id.* at 5.) Tendering only the unpaid principal on the Mortgage and then attempting to "catch up" to the payoff amount did not satisfy the Mortgage because the payoff amount increased daily due to interest. (*Id.*) The First Payoff Letter informed the Fochts that Nationstar could, at its option, return amounts insufficient to satisfy the Mortgage; the First Tender was insufficient, and Nationstar was within its rights to return it to the Fochts. (*Id.*) The Second Tender was likewise insufficient, so Nationstar returned it also to the Fochts. (*Id.* at 6.) The Fochts have not made any further payments on the Mortgage, so it was never satisfied. (*Id.*)

Nationstar next contends that the Fochts have failed to demonstrate that the amounts contained in the First Tender and Second Tender amounted to payment in full of the Mortgage. (*Id.*) Although the Fochts have shown the amounts tendered to Nationstar, they have not shown that either the First Tender or the Second Tender matched or exceeded the payoff amounts on the dates the Fochts sent the respective tenders. (*Id.*) Without establishing the payoff amount on the dates they tendered the funds, no reasonable jury could find that the Fochts satisfied the Mortgage. (*Id.*)

Although there may have been sufficient funds in the Mortgage's escrow account to make up for the deficiencies in the First Tender and Second Tender, Nationstar asserts that it had no duty to apply those funds to satisfy the deficiencies. (*Id.* at 7.) Although a mortgage servicer, like Nationstar, may use escrow funds to satisfy outstanding mortgage balances, it is under no obligation to do so. (*Id.* at 8.) As the Fochts have failed to show that Nationstar was obligated to use escrow funds, and have also failed to show that

sufficient funds remained in the escrow account to satisfy the deficiency, the Fochts cannot show that they satisfied the Mortgage. (*Id.*)

Nationstar argues that, as an element of each claim, the Fochts must show that they tendered payment in full to Nationstar. (*Id.*) Although the Fochts have shown that they tendered some payment to Nationstar, they have not demonstrated that either the First Tender or the Second Tender was sufficient to satisfy the Mortgage. (*Id.*) As there is no competent evidence demonstrating the payoff amount in the record, no reasonable jury could find for the Fochts, and Nationstar is therefore entitled to summary judgment. (*Id.*)

The Fochts respond that Nationstar is not entitled to summary judgment because a reasonable jury could conclude that they tendered the requisite amounts to pay off the Mortgage through either the First Tender or the Second Tender. (*See* ECF No. 53 at 18.) Whether a tender amounts to payment in full is a question of fact for the jury, and the Fochts tendered the amount Nationstar demanded to satisfy the Mortgage. (*Id.* at 19–20.) As Nationstar's sole basis for summary judgment is that the Fochts failed to satisfy the Mortgage, summary judgment is inappropriate here because a reasonable jury could conclude that the Fochts tendered sufficient funds to satisfy the Mortgage. (*Id.* at 20.)

### 2. The Fochts Failed to Tender Sufficient Funds to Pay off the Mortgage

The MSA provides that a mortgagor may send a notice to his or her mortgagee to satisfy the mortgage at issue and release its claim on the property mortgaged. 21 Pa. Cons. Stat. § 721-6(a). Once a mortgagor sends a statutorily-compliant notice to satisfy, the mortgagee has 60 days to satisfy the mortgage. *Id.* § 721-6(d). If the mortgagee fails to

satisfy the mortgage within 60 days, the mortgagor has a claim against the mortgagee in an amount up to the value of the mortgage itself. *Id.* A successful mortgagor can obtain costs, including attorney fees. *Id.*

To succeed on a claim under the MSA, a mortgagor must show: (1) he or she has paid all sums due under the mortgage; (2) he or she requested that the mortgagee satisfy the mortgage; and (3) the mortgagee failed to timely satisfy the mortgage.[12] *O'Donoghue v. Laurel Savs. Ass'n*, 728 A.2d 914, 917 (Pa. 1999) (citing 21 Pa. Cons. Stat. §§ 681, 682, 721-6). Nationstar does not dispute either that the Fochts requested that Nationstar satisfy the Mortgage or that it failed to timely satisfy the Mortgage. Accordingly, the Court confines its analysis solely to whether the Fochts paid all sums due under the Mortgage.

### a. There Is No Genuine Dispute of Material Fact that the Fochts Had Notice of the Payoff Amounts Stated in the Payoff Letters

Under Pennsylvania law, when a properly addressed letter with appropriate postage is placed in the mail, a rebuttable presumption arises that that letter reached its destination through the mail. *Commonwealth v. Thomas*, 814 A.2d 754, 758 (Pa. Super. Ct. 2002). This is the "mailbox rule." *Id.* Once a party brings forward evidence showing that it mailed the letter at issue, the rebuttable presumption arises. *Breza v. Don Farr Moving & Storage Co.*, 828 A.2d 1131, 1135 (Pa. Super. Ct. 2003). This evidence may consist of direct evidence that the letter was mailed, or by evidence of business custom. *Sheehan v.*

---

[12] As the Mortgage's servicer, Nationstar was the Fochts' point of contact for the Mortgage, processed the Fochts' payments, and was responsible for determining whether the Mortgage was paid off and properly satisfied. (*See* ECF No. 43 ¶¶ 7, 9–13.) Accordingly, any request to satisfy the Mortgage under Section 721–6 would have to be sent to Nationstar, the party responsible for telling the Mortgage's holder that the Fochts had satisfied it. Accordingly, Nationstar is a proper subject of a claim under Section 721–6.

*W.C.A.B. (Supermkts. Gen.)*, 600 A.2d 624, 630 (Pa. Commw. Ct. 1991). Testimony from the addressee that the letter was not received is not, standing alone, sufficient to rebut the mailbox rule's presumption. *Breza*, 828 A.2d at 1135. However, testimony from a third-party with no stake in the outcome of the case, to whom the letter was also mailed, that the third-party never received the same letter is sufficient to rebut this presumption. *Donegal Mut. Ins. Co. v. Pa. Ins. Dep't*, 719 A.2d 825, 827 (Pa. Commw. Ct. 1998). Receipt of a properly addressed letter implies knowledge of its contents. *See Breza*, 828 A.2d at 1135 (imputing knowledge of the contents of a notice of arbitration contained in a mailed document).

The Court holds that Nationstar has submitted sufficient evidence of record to trigger the mailbox rule and give rise to a rebuttable presumption that the Fochts received the Payoff Letters. The Fochts do not deny that Nationstar ever sent either of the Payoff Letters—the Fochts only deny that they ever received them. (ECF No. 54 ¶¶ 11, 17.) Nationstar has produced both of the Payoff Letters in support of its Motion. (*See* ECF No. 43-1 at 43–45, 51–53.) Further, both of the Payoff Letters are addressed to the Fochts at the P.O. Box listed as their mailing address. (*See* ECF No. 43-1 at 44, 52; ECF No. 55-4 at 15:5–18.) Nationstar's representative, Edward Hyne, testified that Nationstar sent the Payoff Letters on the respective dates listed: March 22, 2018, and April 25, 2018. (*See* ECF No. 55-4 at 8:5–15:18.) The only evidence that the Fochts have produced in response is James Focht's testimony that the Payoff Letters were never received.[13] (ECF No. 55-1 at 9:15–20.) Although there is some evidence of confusion as to the proper address to which

---

[13] Because Nationstar's argument rests solely upon the First Payoff Letter and the Second Payoff Letter, the Court confines its analysis solely to those two letters.

Nationstar should have sent the Payoff Letters—either to the P.O. Box or the Property directly—this is insufficient to raise a genuine dispute of material fact because it is undisputed that the Fochts were able to receive mail at either location. (*See id.* at 10:16–23.) As the Fochts' remaining evidence is a bare denial that they ever received the Payoff Letters, the mailbox rule's presumption remains unrebutted: the Fochts received the Payoff Letters and were therefore aware of their contents, including the payoff amounts listed in the Payoff Letters.

### b. There Is No Genuine Dispute of Material Fact that the Fochts Failed to Tender Sufficient Funds to Satisfy the Mortgage

Having concluded that the Fochts received notice of the amounts required to satisfy the Mortgage contained in the Payoff Letters, the Court now turns to whether a reasonable jury could conclude that the Fochts tendered either of those amounts. The First Payoff letter, issued on March 22, 2018, listed a payoff amount of $141,470.99, good through April 20, 2018. (ECF No. 43 ¶¶ 11–12.) The Second Payoff Letter, issued April 25, 2018, listed a payoff amount of $141,885.44, good through May 4, 2018. (*Id.* ¶ 17.) Accordingly, if the Fochts have presented sufficient evidence from which a jury could conclude that they tendered an amount of $141,470.99 between March 22, 2018 and April 20, 2018, or an amount of $141,885.44 between April 25, 2018, and May 4, 2018, there is a genuine dispute of material fact as to whether the Fochts tendered sufficient funds to trigger Nationstar's obligation to satisfy the Mortgage.[14]

---

[14] This analysis applies to all payoff letters Nationstar issued. The payoff letter with the lowest balance due, issued on April 6, 2018, and good through April 11, 2018, had a payoff amount of $141,239.12, greater than the value of either the First Tender or the Second Tender. (*See* ECF No. 55-4 at 9:15–10:11.) As the Court concludes that there is no evidence from which a jury could

The Court holds that no reasonable jury could conclude, from the evidence present in the record, that the Fochts tendered sufficient funds to meet either payoff amount listed in the Payoff Letters.  The First Tender, mailed on March 27, 2018, consisted of a check in the amount of $139,307.50, which was the amount of principal owing on the Mortgage as of that date. (ECF No. 43 ¶ 14; ECF No. 54 ¶ 14.)  In connection with the First Tender, the Fochts included a letter stating that they were aware that the First Tender was deficient and were willing to make up the difference if Nationstar informed them of the amount they were deficient; no other tender was included in the First Tender.  (ECF No. 54 ¶ 14.)

On April 18, 2018, the Fochts sent the Second Tender to Nationstar; the Second Tender included the check used in the First Tender and an additional check in the amount of $1,777.05, for a total of $141,084.55.  (ECF No. 43 ¶ 18; ECF No. 54 ¶ 18.)  This amount was approximately $400 less than the amount listed in the First Payoff Letter.  After sending the Second Tender on April 18, 2018, the Fochts have not attempted to payoff the Mortgage again nor have they made regular payments on the Mortgage.  (ECF No. 43 ¶¶ 22–23; ECF No. 54 ¶¶ 22–23.)  Accordingly, as the Fochts tendered no payment to Nationstar during the period listed in the Second Payoff Letter, no reasonable jury could conclude that the Fochts paid the amount required to payoff the Mortgage after the First Payoff Letter's period expired on April 20, 2018.

In order to make up the deficiency in the First Tender and the Second Tender, the Fochts asked Nationstar to utilize funds remaining in the Mortgage's escrow account. (ECF No. 55-1 at 23:17–24:9.)  Although the parties dispute whether the Fochts' request

---

conclude that the Fochts ever tendered an amount greater than the Second Tender, the Court need not analyze whether the Fochts met the amount listed in each separate payoff letter.

that Nationstar use funds in the escrow account was proper, this dispute is not material. (*See id.*; ECF No. 55-1 at 2:3–24.)  Even if the Fochts' request for Nationstar was sufficient to obligate Nationstar to use funds in the Mortgage, the Fochts have produced no evidence as to the amount of funds in the escrow account at the time when Nationstar was in possession of either the First Tender or the Second Tender.  With no evidence of record as to whether the funds in the escrow account would have been sufficient to cover the deficiency, no reasonable jury could conclude that the Fochts tendered the full amount required to pay off the Mortgage.

Accordingly, as the Fochts have failed to produce evidence from which a reasonable jury could conclude that they tendered sufficient funds to satisfy the Mortgage, Nationstar is entitled to summary judgment on the Fochts' MSA claim.

### B.  Nationstar Is Entitled to Summary Judgment on the Fochts' Quiet Title Claim

A quiet title action is a lawsuit that resolves a dispute over the state of title to real property which the plaintiff possesses. *Woodhouse Hunting Club, Inc. v. Hoyt*, 183 A.3d 453, 457 (Pa. Super. Ct. 2018).  The plaintiff bears the burden of proving his or her title. *Id.*  The elements that a plaintiff must prove vary depending on the cause of action under which the quiet title action is brought (e.g., the plaintiff brings a quiet title action alleging that he or she has adversely possessed certain property), but the plaintiff must prove that his or her claim to title is superior to all other claimants. *See id.*  For purposes of claims involving mortgage satisfactions, Pennsylvania is a "title theory" state, meaning that the act of granting a mortgage on property by the mortgagor conveys title to the property to

the mortgagee.[15]  *Pines v. Farrell*, 848 A.2d 94, 100 (Pa. 2004).  Accordingly, if a mortgage on the property remains unsatisfied and outstanding, the mortgagee retains title to the property, and a court cannot quiet title in favor of the plaintiff because the mortgagee's claim on the property trumps that of the mortgagor's (the plaintiff).

As no reasonable jury could conclude that the Fochts tendered sufficient funds to satisfy the Mortgage, the Mortgage remains on the Property's title and the Court cannot quiet title to the Property in favor of the Fochts.  Nationstar is therefore entitled to summary judgment on the Fochts' quiet title claim.[16]

### C. Nationstar Is Entitled to Summary Judgment on the Fochts' FCEUA and UTPA Claims[17]

#### 1. The Parties' Arguments

Nationstar argues that the Fochts' FCEUA claim fails for the same reason as the Fochts' quiet title and MSA claims fail: the Fochts never paid off the Mortgage.  (ECF No. 44 at 8.)   The Fochts' claim under the FCEUA alleges that Nationstar used false or deceptive practices in connection with attempting to collect defaults on the Mortgage. (ECF No. 1-3 ¶¶ 61–63.)  The Fochts allege that these practices include misrepresentations about the status of the Mortgage, including wrongfully stating that the Fochts defaulted

---

[15] This is in contrast to "lien theory" states which hold that the granting of a mortgage only gives the mortgagee a lien on the mortgaged property, not title.

[16] Whether this Court is the proper forum for a quiet title action, or whether this Court has the power to quiet title to the Property are issues the Court need not address.  The Court notes that Pennsylvania Rule of Civil Procedure 1062 would seem to preclude a quiet title action from being filed before this Court, but as the parties have not raised the issue, and Nationstar is entitled to summary judgment on other grounds, the Court will not address the issue further.

[17] The Fochts' UTPA claim is derivative of their FCEUA claim, as they assert that Nationstar's alleged violation of the FCEUA also constitutes a violation of the UTPA.  (ECF No. 1-3 ¶¶ 73–75.) Accordingly, as Nationstar is entitled to summary judgment on the Fochts' FCEUA claim, it is also entitled to summary judgment on the Fochts' UTPA claim.

on the Mortgage. (*Id.* ¶ 63.) However, because the Fochts never tendered sufficient funds to pay off the Mortgage, it was never satisfied. (ECF No. 44 at 8.) The Fochts stopped making payments and defaulted, and therefore Nationstar was within its rights to report the default. (*Id.*) Further, the Fochts' UTPA claim must be dismissed because the UTPA claim is founded upon a violation of the FCEUA; as Nationstar is entitled to summary judgment on the Fochts' FCEUA claim, it is also entitled to summary judgment on their UTPA claim. (*Id.*)

The Fochts, again disputing Nationstar's position that the Mortgage was never paid in full, contend that a reasonable jury could conclude that Nationstar, by falsely reporting the default status of the Mortgage, engaged in actions that violate the FCEUA, and that summary judgment is therefore improper. (ECF No. 53 at 11–13.) The Fochts also allege several other violations of the FCEUA, including damaging their credit scores by reporting this inaccurate information. (*See* ECF No. 1-3 ¶¶ 64–72.)

## 2. No Reasonable Jury Could Conclude that Nationstar Violated Either the FCEUA or the UTPA

The FCEUA is a Pennsylvania statute that bars unfair or deceptive debt collection acts or practices that violate the federal Fair Debt Collection Practices Act ("FDCPA"). 73 Pa. Cons. Stat. §§ 2270.2, 2270.4. The FDCPA, in turn, bans using "false, deceptive, or misleading" representations to collect debts. 15 U.S.C. § 1692e. The FDCPA also bans the use of "unfair or unconscionable means" to collect a debt. *Id.* § 1692f.

A plaintiff asserting an FCEUA claim alleging violations of the FDCPA must show that the actions or communications at issue would "deceive or mislead the least

sophisticated debtor."  *See Brown v. Card Serv. Ctr.*, 464 F.3d 450, 453–54 (3d Cir. 2006). The UTPA provides consumers, such as the Fochts, a civil remedy for violations of the FCEUA.  73 Pa. Cons. Stat. § 2270.5(a).

The Fochts allege that Nationstar has violated the FCEUA by: (1) engaging in debt collection efforts where it misrepresented the character, legal status, and amount of the Mortgage; (2) making false allegations that the Fochts have defaulted on the Mortgage; (3) employing deceptive debt collection efforts; and (4) improperly assessing fees and charges on the Fochts' account.  (ECF No. 53 at 11.)

Nationstar's purported first and second violations of the FCEUA relate to statements Nationstar allegedly made to other entities that the Fochts had defaulted on their Mortgage; according to the Fochts, these statements were false because there was never a default on the Mortgage and therefore violated the FCEUA.  (ECF No. 53 at 11.) However, the Court has determined that no reasonable jury could conclude that the Fochts satisfied the Mortgage.  *See supra* Section VI.A.2.  As the Fochts have made no payments on the Mortgage since March 2018, and the Mortgage was not paid off, the Fochts are in default.  (*See* ECF No. 43 ¶ 23; ECF No. 54 ¶ 23.)  Accordingly, any statements Nationstar made that the Fochts were in default are not false, deceptive, or misleading because the Fochts were, in fact, in default.[18]  Nationstar is therefore entitled to summary judgment on the Fochts' FCEUA claim to the extent that it seeks relief for

---

[18] The Court also notes that the Fochts have not adduced record evidence as to the contents of these alleged statements, when they were made, to whom they were made, or even whether they were made at all.  The Court would also grant summary judgment to Nationstar on these alternate grounds because the Fochts have failed to raise a triable issue of fact on this alleged conduct.

Nationstar's allegedly violating the FCEUA by reporting that the Mortgage was not satisfied, misrepresenting the debt as still owing, or in default.

The Fochts have also accused Nationstar of conduct that violates the FCEUA regardless of whether Nationstar accurately reported that the Fochts had defaulted on the Mortgage, which the Court must now consider; namely, whether a reasonable jury could conclude that Nationstar engaged in deceptive debt collection efforts and improperly assessed fees against the Fochts. (ECF No. 54 at 11.) The Fochts allege that Nationstar avoided their requests and inquiries about the Mortgage, as well as employed deceptive debt collection practices and improperly assessed fees and charges, including making unnecessary inspections. (ECF No. 1-3 ¶ 63; ECF No. 54 at 11.)

Although the Fochts have alleged that Nationstar has violated the FCEUA through deceptive practices and inappropriate fees, they have not raised a triable question of fact related to claims of deceptive debt collection practices or improper assessment of fees and charges. In their Response to Nationstar's Concise Statement of Material Facts (ECF Nos. 43, 54), and the appendices they attached to that document (ECF No. 55), the Fochts neither identify conduct that amounts to a violation of the FCEUA, nor do they adduce evidence supporting any alleged violations.[19] Arguments of counsel, contained in briefs filed with the Court, are insufficient to raise a genuine dispute of material fact and prevent summary judgment. *See* Fed. R. Civ. P. 56(c)(1).

---

[19] Although the Fochts introduced evidence that could support their claims of improperly assessed fees at the hearing on their Motion for Sanctions, this evidence was not included in their Opposition to Nationstar's Motion for Summary Judgment and the Court therefore does not consider such evidence in ruling on Nationstar's Motion for Summary Judgment.

Accordingly, Nationstar is entitled to summary judgment on the Fochts' FCEUA claim. Because the sole basis for the Fochts' UTPA claim is that Nationstar violated the FCEUA (*see* ECF No. 1-3 ¶¶ 73–75), Nationstar is also entitled to summary judgment on the Fochts' UTPA claim.

### D. Nationstar Is Entitled to Summary Judgment on the Fochts' FCRA Claims

#### 1. The Parties' Arguments

Nationstar argues that for the Fochts to prevail on their FCRA claims, the Fochts must prove that they tendered sufficient funds to satisfy the Mortgage. (ECF No. 44 at 8.) As the Fochts failed to tender sufficient funds, Nationstar is entitled to summary judgment on the Fochts' FCRA claims. (*Id.*)

The Fochts, in response, reiterate their arguments that whether they tendered sufficient funds to pay off the Mortgage is a disputed question of material fact for the jury. (ECF No. 53 at 18.) After tendering payment in full, the Fochts suffered decreases in their credit scores and credit rating due to Nationstar reporting that they had defaulted on the Mortgage. (*Id.* at 15–16.) Nationstar also listed the Fochts as consumers who refuse to pay their debts. (*Id.* at 16.) The Fochts assert that they then filed complaints with consumer reporting agencies ("CRAs")[20] disputing the accuracy of this information, but Nationstar failed to undertake a reasonable investigation of their complaints, although FCRA obligates Nationstar to so investigate. (*Id.* at 16.)

---

[20] The three major CRAs—Equifax, Experian, and TransUnion—serve as clearinghouses of credit information. Lenders across the credit spectrum utilize this information in a variety of ways in determining whether to extend credit to an entity or individual.

### 2.   No Reasonable Jury Could Conclude that Nationstar Violated FCRA

FCRA's purpose is to ensure the fair and accurate reporting of credit and banking information; to do so, it imposes certain requirements upon entities that report such information.  *See* 15 U.S.C. §§ 1681 *et seq.*  FCRA also provides consumers, the subjects of this information, with a right of action against entities that fail to follow its requirements.  *Id.* §§ 1681n, 1681o.   Section 1681s–2 governs the duties of entities that provide information to CRAs—these are called "furnishers."  Furnishers, such as Nationstar, have an obligation to provide accurate information to CRAs.  *Id.* § 1681s–2(a).  If consumers, like the Fochts, believe that a furnisher has reported incorrect information to a CRA, they may dispute that report, and FCRA specifies a procedure for so doing.  *Id.* § 1681s–2(a)(8)(D).  A consumer seeking to dispute allegedly inaccurate information must send a notice to the furnisher at the furnisher's specified address for such notices identifying the information disputed and the basis for the dispute, as well as provide supporting documentation.  *Id.*  Once a consumer issues a proper notice of dispute, the furnisher must conduct a "reasonable investigation" into the report and the allegedly inaccurate information.  *Id.* § 1681s–2(a)(8)(E).

The Fochts allege that they informed Nationstar that it was reporting incorrect information to CRAs; Nationstar's subsequent failure to investigate and correct this inaccurate information after the Fochts filed a notice of dispute forms the basis of their FCRA claim.  (ECF No. 54 at 15–16.)  The Court first addresses the Fochts' claim that Nationstar furnished inaccurate information to a CRA, then proceeds to consider whether, once the Fochts attempted to dispute the information Nationstar reported, Nationstar

subsequently violated FCRA by not conducting a reasonable investigation into the dispute information.

The Fochts' claim that Nationstar reported inaccurate information to a CRA in violation of FCRA rests upon their allegation that Nationstar improperly reported the Fochts as defaulting on their obligations under the Mortgage—this report was allegedly inaccurate because the Fochts had tendered payment in full. (*See* ECF No. 1-3 ¶¶ 77–86.) As discussed above, *see supra* Section VI.A, there is no genuine dispute of material fact that the Fochts failed to tender payment in full. Accordingly, the Fochts had defaulted on the Mortgage, Nationstar's reporting of that default was not inaccurate information, and Nationstar's reporting of this default was not contrary to FCRA. Nationstar is therefore entitled to summary judgment on the Fochts' FCRA claim to the extent it seeks redress for reporting inaccurate information to a CRA.

The Court now turns the Fochts' claim that Nationstar failed to investigate its reporting of allegedly inaccurate information upon receipt of the Fochts' notice of dispute. Although the Fochts allege that they filed a notice of dispute with Nationstar to the effect that Nationstar was reporting incorrect information about their default on the Mortgage, they have produced no evidence to support these allegations. (*See* ECF No. 54 at 15–16.) The Court has reviewed all the evidence the Fochts presented in opposition to Nationstar's Motion and must conclude that there is no evidence of record that the Fochts ever disputed the accuracy of the reports by following the procedure Section 1681s–2(a)(8)(D) outlines. The Fochts have produced no copy of any notice they may or may not have sent to Nationstar, nor have they produced testimony that they notified Nationstar,

and there is no other evidence that the Fochts complied with Section 1681s–2(a)(8)(D) in such a way as to trigger Nationstar's duty to investigate the allegedly inaccurate information. The assertions of counsel, filed in documents before this Court, and unsupported by evidence of record, are insufficient to raise a genuine dispute of material fact that can preclude summary judgment. *See* Fed. R. Civ. P. 56(c)(1). As the Fochts have not established that they notified Nationstar that they believed that its reports to the CRAs were inaccurate, Nationstar cannot have violated FCRA by failing to conduct an investigation into the accuracy of the information it reported to CRAs. Accordingly, the Fochts have not produced evidence from which a reasonable jury could conclude that Nationstar violated FCRA and Nationstar is therefore entitled to summary judgment on the Fochts' FCRA claims.

### E.   The Court Denies the Fochts' Motion for Sanctions

#### 1.   The Parties' Arguments

The Fochts argue that the Court should impose sanctions upon Nationstar due to its repeated trespasses onto the Property, imposition of unnecessary and unmerited fees for insurance and inspections, and payment of—and charges to the Fochts for—property taxes not owed. (ECF No. 39 at 1–4.) Nationstar has failed to exercise control over its operations, and even after receiving notice that its practices were violations of law, has persisted in these violations. (*Id.* at 5–6.) Nationstar's conduct merits sanctions because the Fochts asked Nationstar to stop conducting its inspections of the Property, which it failed to do. (ECF No. 67 at 2–3.) Since the hearing on the Motion for Sanctions, Nationstar has continued to impose unwarranted fees on the Fochts without explanation

and have engaged in a pattern and practice of deceitful and untrustworthy conduct that merits sanctions. (*Id.* at 4–8.) These actions have caused the Fochts substantial difficulty, stress, and turmoil, and Nationstar should be sanctioned accordingly. (ECF No. 39 at 5–6; ECF No. 67 at 8–11.)

Nationstar replies that the Court should not impose sanctions because it has not acted in bad faith and has not violated any order of this Court. (ECF No. 40 at 1–2.) Nationstar had an obligation to continue to service the Mortgage and the Mortgage permitted Nationstar to enter and inspect the property. (ECF No. 68 at 20–21.) Nationstar also acted reasonably to protect the interest of the mortgagee by seeking insurance on the Property when it believed there was none. (*Id.* at 23–24.) Nationstar's actions were related solely to its continuing obligation to service the Mortgage even though the parties dispute their respective obligations under the Mortgage and therefore were not in bad faith. (ECF No. 40 at 3.)

### 2. Nationstar Did Not Act in Bad Faith

In imposing sanctions under its inherent powers, the same considerations that guide the imposition of sanctions under the Federal Rules of Civil Procedure apply. *Republic of Phil. v. Westinghouse Elec. Corp.*, 43 F.3d 65, 74 (3d Cir. 1994). First, the Court must consider the allegedly sanctionable conduct and explain why it merits sanctions. *Id.* This conduct must be either done in bad faith or "vexatiously, wantonly, or for oppressive reasons." *Chambers*, 501 U.S. at 45–46. The Court must take into account the severity of the wrongdoing, and whether the wrongdoing prejudices the opposing party or hinders

the administration of justice, as well as any mitigating factors. *Republic of Phil.*, 43 F.3d at

74.

     The Court holds that Nationstar's conduct does not merit sanctions because there

is no evidence that Nationstar acted in bad faith or for oppressive reasons.  The clear

weight of the evidence shows that Nationstar's actions were due either to its continuing

obligation to service the mortgage—for example, inspecting a property secured by a

mortgage which it believed was in default—or from a simple, clerical error in executing

the Mortgage.[21]  Nationstar has either refunded all costs, or is in the process of refunding

all costs, associated with the insurance premiums and taxes.[22]  (Tr. at 116:8–19; 117:23–

118:14.)  Although Nationstar has not refunded the costs of the inspections, there is no

evidence that Nationstar ordered the inspections in bad faith or for vexatious purposes.

(*See id.* at 119:21–120:19.)  The property inspectors did set foot on the Property, but the

evidence demonstrates that they did so in violation of Nationstar's directives that the

inspections be conducted in a manner that was either "drive-by" or "no contact."  (*See* Tr.

at 76:1–17; 119:14–20.)   Although Nationstar may have been negligent in failing to

supervise these inspectors—a point on which the Court expresses no view—simple

negligence is not bad faith.  Conducting inspections of property when the mortgagor

---

[21] The Court in no way condones the error in documenting the Mortgage that led to much of the Fochts' Motion for Sanctions, but the error was not made by Nationstar in the first place, and it cannot reasonably be said that Nationstar acted in bad faith by relying upon the property address listed in the Mortgage and note, particularly when the Mortgage contained no record of where the prior conveyance of the Property was recorded.  Further, the Fochts signed the Mortgage and note which both incorrectly identified the Property's address, so if blame were to be laid for the error, both the Fochts and the mortgagee would have to bear some of it.

[22] It appears that Nationstar's payment of the taxes on 166 Kingdom Street may stem from a similar miscommunication because 166 Kingdom Street is listed on the title insurance policy acquired at the time the Mortgage was executed.  (Tr. at 35:1–6; 115:21—116:1; Def. Ex. 4 at 8.)

stops making payment on the mortgage is a perfectly "reasonable or appropriate" step to protect the mortgagee's investment, as is charging the cost of such inspections to the mortgagor.  The Mortgage specifically provides that, upon default, the mortgagee may protect or assess the Property, as well as repair or secure it, and may enter the property to do so; further, in such a case, the Fochts are to bears the cost of such steps.  (Def. Ex. 1 at 8–9.)  Nationstar's conduct is in no way "egregious" and was consistent with the Mortgage.

The Fochts have not shown how any of Nationstar's actions prejudice them, nor how those actions interfere with the Court's administration of justice.  Finally, the fact that much of the dispute stems from an innocent error is a strong mitigating factor in favor of not imposing sanctions.  Nationstar has not engaged in bad faith conduct and the Court accordingly denies the Fochts' Motion for Sanctions.

## VII.    Conclusion

For the foregoing reasons, the Court grants Nationstar's Motion for Summary Judgment and denies the Fochts' Motion for Sanctions.

A corresponding order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JAMES C. FOCHT and KAREN FOCHT,       )       Case No. 3:18-cv-151
                                      )
           Plaintiffs,                )       JUDGE KIM R. GIBSON
                                      )
    v.                                )
                                      )
NATIONSTAR MORTGAGE, LLC, d/b/a       )
MR. COOPER, as successor in interest to )
SETERUS, INC.                         )
                                      )
           Defendant.                 )

## ORDER

AND NOW, this 25th day of August, 2020, upon consideration of Defendant

Nationstar Mortgage, LLC's Motion for Summary Judgment (ECF No. 45) and Plaintiffs

James C. Focht and Karen Focht's Motion for Sanctions (ECF No. 39), and for the reasons

stated in the accompanying Memorandum Opinion, **IT IS HEREBY ORDERED** as

follows:

1.   Nationstar Mortgage, LLC's Motion for Summary Judgment is **GRANTED**;

2.   James C. Focht and Karen Focht's Motion for Sanctions is **DENIED**.


BY THE COURT:

KIM R. GIBSON
UNITED STATES DISTRICT JUDGE